THE STATE OF MISSOURI, Respondent, v. CHARLES KESSLER et al., Appellants.

Kansas City Court of Appeals, March 1, 1909.

SCHOOLS: Use of House: Literary Societies: Directors: Place of Meeting: Criminal Prosecution. The annual meeting of the district permitted the schoolhouse to be used for literary purposes in accordance with the statute. Thereafter the directors held a meeting outside the district and made a record forbidding further use by reason of the condition the house was left in and because the literary meeting was a detriment to the

school. *Held*, the statute requires all meetings of the board to be held in the district and the members of the literary society could not be prosecuted for entering and using the schoolhouse after the alleged action of the directors.

Appeal from Vernon Circuit Court.—*Hon. Berry G. Thurman*, Judge.

REVERSED.

*A. J. King* and *D. M. Gibson* for appellants.

(1) Section 9763, Revised Statutes 1899, provides among other things, that a schoolhouse may be used for religious, literary or other public purposes, when demanded by a majority of the voters of such district voting at an annual or special meeting where such question is submitted, etc. (2) Section 1889 of the Revised Statutes provides against the wrongful entry of said schoolhouse. State v. Tutt, 63 Mo. 601, 602. (3) When the board of directors makes an order closing the schoolhouse, after it has been opened by the voters, it must be done for cause and that cause must be found in the statutes, to-wit: By the parties failing to keep the house clean and in repair, and public notice of the closing of the house should be made after the order is made of the closing of the schoolhouse. See section 9763 of the Revised Statutes of 1899. (4) The information does not charge any offense against the defendants, and is vague, indefinite and uncertain, and the verdict and judgment is not supported by the evidence. State v. Crooker, 95 Mo. 389; State v. Hayward, 83 Mo. 299.

*J. N. Coil*, Prosecuting Attorney, and *M. T. January* for respondent.

(1) Schoolhouses are in the possession of the directors of the district, and it is made the duty of the directors to see that they are kept in good order, and a

neglect of this duty subjects them to criminal prosecution. Eads v. Wooldridge, 27 Mo. 251; R. S. 1899, sec. 9763, 9783. (2) When a schoolhouse is voted open for other than school purposes, the directors are empowered to close it, when parties so using, do not leave it in good condition. R. S. 1899, sec. 9763. (3) The directors being in possession of the schoolhouse, it is immaterial whether the order closing it to the literary was made rightfully or wrongfully. A forcible entry would be an unlawful entry, and a violation of the statute. Sitton v. Sapp, 62 Mo. App. 197. (4) All who counsel, aid or abet the commission of a misdemeanor, are principals. Sherwood's Commentaries on Missouri Statute Law, page 240. (5) An information may charge the commission of a misdemeanor in several different ways without being open to attack for duplicity. State v. Montgomery, 109 Mo. 645. (6) By failing to demur, move to quash or to require the State to elect, defendant waives the objection of duplicity in an information. State v. Blakely, 184 Mo. 187.

JOHNSON, J.—On information of the prosecuting attorney of Vernon county, defendants were tried and convicted for the commission of an offense in violation of section 1889, Revised Statutes 1899. The charge is that on January 8, 1908, defendants unlawfully entered the Stanton schoolhouse located in District No. 30, Badger township, Vernon county. Defendants were members of a literary society which had been using the schoolhouse for its meetings and entertainments pursuant to a resolution passed by a majority of the voters of the school district at an annual meeting.

Section 9763, Revised Statutes 1899, authorizes the use of schoolhouses "for religious, literary or other public purposes . . . when such use shall be demanded by a majority of the voters of such district voting at any annual or special meeting where such question was submitted." But the statute requires "that where

the use of the schoolhouse is allowed for the above-named purposes, it shall be the duty of the party or parties using it to keep it clean and in good repair and to leave it in as good condition as it was when they took charge of it;" and provides "that should the party or parties so using the said schoolhouse fail to comply with the provisions of this section, the directors of such district may refuse them further use of it until said provisions are complied with."

On December 28, 1907, the board of directors of the school district met in a store in the city of Nevada, a place outside the boundaries of the district, and made an order which was recorded by the clerk as follows:

"*Proceedings of Board of Directors*: Board met December 28, 1907, and voted to close the schoolhouse against the literary entertainment on account of not having left it in good condition and was a detriment to the school." In the evening of January 8, 1908, members of the literary society—defendants among them—appeared at the schoolhouse to hold their meeting and found the building locked. There is no direct evidence to show how it was entered, but it is evident from the facts and circumstances adduced that someone unlocked the door with a key which he had procured somewhere. After the building was entered and the lamps lighted, the members of the board appeared, took the names of defendants and withdrew. The next morning, they made complaint to the prosecuting attorney and this prosecution followed. The evidence shows beyond question that the meetings of the society had been orderly and that the house had been left in good repair and condition, but in the view we take of the action of the board in voting to forbid the society the use of the building, these facts are of little consequence. Should we find that the meeting of the board at which the resolution was adopted was illegal and consequently that the resolution was void, the members of the society under the authority conferred on them by the voters of the dis-

trict had the right to unlock the door and enter the building, regardless of the fact that they did not procure the key they used from the janitor or from someone authorized by the board to deliver it to them. They derived their right to use the building from the people of the district, not from the board, and the latter body was without authority to interfere with such use except on the statutory ground that the society had failed to leave the house in good repair and in a clean condition.

We think the meeting held by the board in Nevada was not a legal meeting and that the action there taken to deprive the society of the use of the schoolhouse was of no effect. The board of directors of the school district is a body clothed with authority to discharge such functions of a public nature as are expressly prescribed by statute. It can exercise no power not expressly conferred or fairly arising by necessary implication from those conferred. It can act only as a body and at meetings called or held in the manner and place provided or authorized by statute. [Pugh v. School District, 114 Mo. App. 688, and cases cited.]

A fair construction of section 9761, Revised Statutes 1899, leads us to say that the Legislature intended to require all meetings of the board to be held in the school district. Without any statutory enactment on the subject, it is obvious that considerations of public policy demand that the official meetings of public bodies be held within the limits of their territorial jurisdiction; otherwise public servants might do in secret that which they would not attempt to do under public scrutiny and thereby much injury might be done to the public welfare. It would be just as proper for the State Legislature to hold its sessions outside of the State, or for a county clerk to meet and transact business in another county as it was for these school directors to attempt to hold a meeting outside their school district. The action of the board was void and the literary so-

ciety in using the schoolhouse was acting within the right conferred on it by the voters of the district.

It follows that the judgment must be reversed.    All concur.