[1] This is an action in three counts by which plaintiff school district seeks to recover the tuition fee allegedly due from defendant because of the attendance at its school of defendant's three minor children not residents within the district. Each count was for the amount due for the attendance of a particular child at the rate of tuition established by the board of directors of plaintiff school district from time to time.
[2] Plaintiff school district is located in Cape Girardeau County and comprises the same territory as the City of Cape Girardeau, while defendant, his wife, and his three children reside at Illmo, in Scott County, which adjoins Cape Girardeau County to the south. However defendant, who is an attorney at law, maintains his office in the City of Cape Girardeau where he is an active member of the local bar; and during the period in question he was the owner of several parcels of real estate in the City of Cape Girardeau upon which he regularly paid whatever taxes were due for the benefit of plaintiff school district.
[3] The petition alleged that the Illmo school district within which defendant and his three children resided had maintained an approved high school offering a course of study through the twelfth grade during all the time in question, and that the three children were wholly supported by defendant and his wife, and were not bound in any way as apprentices. All this was to negative any state of facts which, under the law, would have entitled the children to attend plaintiff district's school without imposing a personal liability upon defendant for the payment of their tuition.
[4] It was then alleged in the first count of the petition that on September 1, 1940, defendant's daughter, Betty, applied for admission to plaintiff district's high school, and was admitted upon the condition that defendant pay the sum of $5 a month for her tuition; that she thereafter attended the high school for a period of twenty-seven months until her graduation in May, 1943; and that there was due from defendant for her tuition the sum of $135 with interest, aggregating $152.89.
[5] In the second count it was alleged that on September 1, 1942, defendant's son John applied for admission to plaintiff district's high school, and was admitted upon the condition that defendant pay the sum of $5 a month for his tuition; that prior to the opening of school in September, 1943, the board of directors had increased the rate of *Page 486 
tuition to $7.50 a month; that John attended the high school for a period of twenty-seven months until his graduation in May, 1945; and that there was due from defendant for his tuition at the respectively established rates the total sum of $180 with interest, aggregating $192.49.
[6] In the third count it was alleged that on September 1, 1943, defendant's son William applied for admission to the high school, and was admitted upon the condition that defendant pay the sum of $7.50 a month for his tuition; that William attended the high school for a period of twenty-seven months until his graduation in May, 1946; and that there was due from defendant for his tuition the sum of $202.50 with interest, aggregating $212.71.
[7] For his answer defendant denied that his children were admitted to plaintiff district's high school upon the condition that he pay for their attendance at the established rate of tuition, and then set up that any portion of the alleged claim accruing more than five years prior to the institution of the action was barred by limitation of time.
[8] Coupled with the answer was a motion to dismiss the petition upon the ground that it failed to state a claim upon which relief could be granted.
[9] Thereafter the regular judge of the court disqualified himself, and by agreement Honorable Randolph H. Weber, Judge of the Thirty-third Judicial Circuit, was requested to hear the case as special judge. There was a further agreement that the court should try the facts without a jury; and after defendant's motion to dismiss had been overruled, the case proceeded to trial before the court alone.
[10] The court found that the defense of the statute of limitations did not apply, and that plaintiff school district had sustained its petition in all respects except as to its demand for interest, to which the court found that it was not entitled. The court further found that defendant was not entitled to credit for school taxes paid to plaintiff district, since no such question has been raised in the pleadings.
[11] Judgment was entered in favor of plaintiff school district, and against defendant, in the aggregate amount of $517.50. Following an unavailing motion for a new trial, defendant gave notice of appeal, and by subsequent steps has caused the case to be transferred to this court for our review.
[12] Defendant, raises two principal points on his appeal, the first, that the petition fails to state a cause of action against him, and the second, that even if the petition should be held to state a cause of action, the evidence nevertheless failed to establish a contract to pay tuition, but instead disclosed that the children were admitted upon the solicitation of the superintendent of plaintiff's district's school and with the superintendent's assurance to defendant that no tuition would be demanded. There is still a third point, not carried forward in the argument, that defendant could not in any event be held liable for any part of the claim accruing more than five years before the institution of the action.
[13] It seems entirely clear that the petition states a cause of action. As we have already pointed out, it sets up admitted facts which negative any idea that defendant's children were entitled to attend plaintiff district's school without the payment of tuition, or that their tuition was a proper charge against the district within which they resided; and it then avers that in each instance each of defendant's children was admitted upon the condition that defendant pay tuition at the regular rate prescribed by the board of directors. Since the children were admittedly nonresidents, they were not lawfully entitled to attend plaintiff district's school without the payment of tuition. Sec. 10340, R.S.Mo. 1939, Mo.R.S.A. § 10340; Binde v. Klinge, 30 Mo. App. 285; Barnard School District v. Matherly, 84 Mo.App. 140. Reading the petition in the light of Section 10340 which empowers a board of directors to admit pupils not residents within the district and to prescribe the tuition fee to be paid for their attendance, it reveals a situation imposing a personal liability upon defendant for payment of the regularly established tuition charges in return for the privilege of having his children attend school in a district other than that in which he and *Page 487 
they resided. It is a liability which the law creates, and the lack of an express contract to the same effect would be wholly immaterial.
[14] With all the material facts admitted, the conclusion that the petition states a cause of action leaves no room for doubt upon the question of the sufficiency of the evidence to sustain plaintiff district's right to recover.
[15] The defense, as heretofore indicated, was put upon the ground that defendant's three children were admitted to plaintiff district's school at the solicitation of the superintendent and upon his assurance that no tuition would be required.
[16] In support of this defense, defendant testified that some time in April, 1940, he attended a meeting of the Optomist Club in Cape Girardeau and sat with the superintendent, Louis J. Schultz, who was to address the meeting on matters connected with the operation of the schools. In response to Schultz' inquiry regarding the facilities of the Illmo school which the children were then attending, defendant stated that the school was small and without the wealth or personnel to maintain an adequate plant, but that he had hopes of remedying the situation by a consolidation of the Illmo and Fornfelt schools.
[17] Schultz then inquired about the ages of defendant's children and the grades to which they had progressed, and was told that Betty was finishing the ninth grade or first year of high school that year, and that John and William, being younger, were in lower grades. Schultz also inquired whether defendant was a taxpayer in plaintiff school district, and upon being told that he was, suggested to defendant that he have Betty enter plaintiff district's high school the following September, and then follow the same course with both John and William as each of them completed the first year of high school in Illmo. He then assured defendant that "we would be glad to have them", and that inasmuch as defendant was a taxpayer in the district, "the Board of Education never questions about tuition, you won't be required to pay anything". As a further explanation of his desire to have the children attend the school in Cape Girardeau, he informed defendant that their inclusion among the student body would result in a better showing with the state department, and that the district would be in a position to get additional state aid on account of a higher enrollment. He then went so far as to recommend that the children ride with defendant as he traveled back and forth each day to his office in Cape Girardeau, and he reiterated that "it won't cost you a dime, there will be no charges at all".
[18] Defendant testified further that in his discussion with Schultz he had not been conversant either with the school law or with plaintiff district's rules and regulations, but had simply taken Schultz' word without investigation; that while he had occasionally met Schultz and inquired about the children's progress during the time they were in school, there had never, been anything said about the payment of tuition; that he had at no time received a statement for the children's tuition; and that the first he had known that such a claim was to be made was when he received a letter from Schultz dated June 12, 1946, in which Schultz wrote that regular statements had been sent defendant from time to time, and that the board of directors had instructed him to notify defendant of his obligation and request that payment be made. Defendant did not answer Schultz' letter, nor did he reply to one subsequently received from Judge Oscar A. Knehans after the latter had been employed in his professional capacity to handle the claim on behalf of the district.
[19] Miss Elizabeth Walther, secretary to both the board of directors and the superintendent of schools, testified on direct examination as a witness for plaintiff district that at the end of each school year during the period in question she had mailed defendant a statement for the amount of tuition then due for such of his children as had attended school during the previous year. Her testimony on direct examination was couched in positive terms, and seemingly left no room for any suspicion that she was at all uncertain about the fact that such statements had been sent out. However on *Page 488 
cross examination she frankly admitted that she could not remember any specific instance when such a statement had been mailed; and while she said that carbon copies of the statements had been made at the time of the preparation of the originals, she nevertheless confessed that when she had looked in the files the day previously, there were no such copies to be found. She further admitted that there was no record or minute to show that the question of defendant's obligation to pay tuition had ever been brought before or considered by the board of directors prior to August 26, 1946, when Schultz had read the board the letter he had previously written defendant on June 12, 1946.
[20] Schultz testified that he had no recollection of having sat and talked with defendant at the meeting of the Optomist Club in April, 1940, and that he did not recall having discussed the question of whether defendant was a taxpayer in plaintiff district, or whether a larger enrollment would entitle his school to receive a greater amount of state aid. After some equivocation he finally stated that to the best of his knowledge he had not at any time told defendant that there would be no tuition charged for his children. However he had previously testified that if he did in fact make any such statement, it was because he had informed defendant that "he could get credit for his taxes for the tuition". Earlier in his examination he had said that defendant's nonpayment of tuition had been called to his attention by the secretary of the board, and that it was then that he had written defendant the letter of June 12, 1946.
[21] The dispute between defendant on the one hand and Miss Walther and Schultz on the other hand comprises the only conflict over the facts of the case; and if the matters thus in dispute were so material as to require that the particular controversy be definitely resolved one way or the other, there would certainly be strong ground for accepting defendant's version of what occurred. While defendant's testimony was positive and unequivocal, the same cannot be said for that of Miss Walther and Schultz, as our recital of the facts has already disclosed. On the contrary, the background of the case indicates a situation where it would be plausible to believe that Schultz, being anxious to increase the enrollment of his school, and acting no doubt with the very best intentions, suggested to defendant that he have his children complete their high school courses in plaintiff district's school all without the knowledge of the board of directors, who apparently did not have the matter brought to their attention until August 26, 1946, three months after the last of the children had graduated. It unquestionably weakens defendant's position that in denying his liability he concededly did not inform either the board of directors or Judge Knehans of Schultz' alleged assurance that no tuition would be charged, but the explanation undoubtedly is that tempers were running short, and that in a matter involving his own personal affairs defendant did not exercise the fine judgment that he might have been expected to exercise in the interest of a client.
[22] However the fact of the matter is, just as plaintiff school district insists in its brief, that it is of no real importance whether Schultz assured defendant that no tuition would be charged, since in the event he did give such assurance, he was acting beyond his authority and without the capacity to bind the board of directors, who constituted the governing body of the district and in whose hands the administrative power reposed. Consolidated School Dist. No. 6 v. Shawhan, Mo.App., 273 S.W. 182; 56 C. J. 333. Nor indeed could the directors themselves have lawfully waived the payment of tuition in the case of defendant's children. A board of directors is but a creature of statute, and its members can exercise no authority unless the same is either expressly conferred or else arises by necessary implication from the powers that are conferred. State v. Kessler, 136 Mo. App. 236, 240, 117 S.W. 85, Consolidated School Dist. No. 6 v. Shawhan, supra. We have already pointed out that Section 10340 empowers the board to admit pupils not resident within the district and to prescribe the tuition fee which such pupils must pay. The section then goes on to provide that certain classes of children may attend without *Page 489 
the payment of tuition; and by thus limiting the privilege to certain definitely specified classes, it necessarily excludes the idea that other nonresident children are entitled to the privilege. Binde v. Klinge, supra. It is conceded that defendant's children did not come within the exception; and the directors, in the performance of their public function, would consequently have lacked the authority to open the school maintained by the taxpayers of their own district for the free instruction of children residing in another district. 56 C.J. 811. It was therefore no defense that Schultz may have solicited the attendance of defendant's children and have represented to defendant that no tuition would be charged.
[23] Defendant's failure in his printed argument to deal with the question of whether any part of the claim was barred by limitation of time would indicate that he lays no stress upon the point.
[24] It is the settled rule that where the last item of an open running account accrued within five years before the institution of the action, no part of the account is barred, and this is true even though the account may arise on several different transactions. Klene v. Campbell, Mo.App., 213 S.W. 520. Schultz testified that it had been his idea that defendant would be asked for the payment of tuition after the last of his three children had graduated, and while defendant denied his liability for tuition, his theory nevertheless was that the understanding regarding the attendance of all three of his children had been reached in the one conversation between himself and Schultz. In this situation it is therefore of no particular consequence that plaintiff school district elected to proceed on three counts, since actually the whole of defendant's liability for the attendance of all three children comprised but a single cause of action. Newton v. Miller, 49 Mo. 298. The last item of the account accrued well within five years before the institution of the action, and the lower court ruled properly in holding that the statute of limitations did not apply to any part of the claim.
[25] It follows that the judgment rendered by the Cape Girardeau Court of Common Pleas should be affirmed; and the Commissioner so recommends.