FILED 188
Honorable Paul L. Bradshaw Senator, District 30 705 Woodruff Building Springfield, Missouri 65805
Dear Senator Bradshaw:
This opinion is issued in response to your request for an official ruling of this office concerning the transportation of pupils in an urban school district at the district's expense. Specifically, your questions are as follows:
 "1. Does the school board of Springfield R-12 School District, an Urban School District, have the power and authority to establish and implement a `barrier street' policy under which the school district would furnish free transportation to pupils in kindergarten through eighth grade who are required to cross certain streets considered to be unusually hazardous, designated as `barrier streets,' in going to and from their assigned schools and their homes, when such pupils live less than one mile and more than one-half mile from school measured along (i) the closest traveled way or (ii) the main traveled way, and there has not been a favorable vote of the electorate at an election held in accordance with the provisions of Section 167.231, RSMo?
 "2. If the answer to question No. 1 above is in the affirmative, would the answer thereto be different if under the barrier street policy the cases of individual pupils, whose homes are situated as provided in question No. 1, are considered by a committee and are then reviewed by the school board before transportation is furnished or denied on an individual case basis, the decision depending upon the nature and extent of the hazards involved in a given case and taking into account the age of the pupil and the actual distance he must travel to avoid crossing the unusually hazardous `barrier street?'
 "3. Does the school board of Springfield R-12 School District, an Urban School District, have the power and authority to establish and implement a `barrier street' policy under which the school district would furnish free transportation to pupils in kindergarten through eighth grade who are required to cross certain streets considered to be unusually hazardous, designated as `barrier streets,' in going to and from their assigned schools and their homes, when such pupils live one-half mile or less from school, measured along (i) the closest traveled way or (ii) the main traveled way, even if there should be a favorable vote of the electorate at an election held in accordance with the provisions of Section 167.231, RSMo?
 "4. If the answer to question No. 3 above is in the affirmative, would the answer thereto be different if under the barrier street policy the cases of individual pupils, whose homes are situated as provided in question No. 3, are considered by a committee and are then reviewed by the school board before transportation is furnished or denied on an individual case basis, the decision depending upon the nature and extent of the hazards involved in a given case and taking into account the age of the pupil and actual distance he must travel to avoid crossing the unusually hazardous `barrier street?'
 "5. In applying the provisions of Section 167.231, for the purpose of determining the eligibility of a public school pupil for free transportation, how should the distances referred to in said section be measured —
 A. From the door of the home of the pupil that is nearest the school house along a private lane or roadway, if any, to the main traveled highway, thence along such main traveled highway to the front door of the school house? (See Op. Atty. Gen. Mo. 79, Rough, 11/27/33)
 B. From the door of the home of the pupil nearest the school house to the front door of the school house which the pupil attends along a route which is reasonably suitable for pedestrian travel? (See Op. Atty. Gen. Mo. 21, Wheeler, 3/18/69; Op. Atty. Gen. Mo. 400, Frappier, 11/11/69)
 C. If the distance is to be measured `along a route which is reasonably suitable for pedestrian travel,' what criteria and standards are to be used and how are they to be applied in making such measurement, when the eligibility of a public school pupil to free school transportation is determined under the provisions of Section 167.231?
 D. In computing state aid under the recently enacted State Aid for Transportation of Pupils law, would the answers to questions A, B, and C above be likewise applicable when measuring the distances from a pupil's home to the school to which he is assigned?"
Section 167.231, RSMo Supp. 1975, provides as follows:
 "Within all school districts except metropolitan districts the board of education shall provide transportation to and from school for all pupils living more than three and one-half miles from school and may provide transportation for all pupils living one mile or more from school. When the board of education deems it advisable, or when requested by a petition signed by ten taxpayers in the district, to provide transportation to and from school at the expense of the district for pupils living more than one-half mile from school, the board shall submit the question at an annual or biennial meeting or election or a special meeting or election called for the purpose. Notice of the election shall be given as provided in section 162.061, RSMo. If two-thirds of the voters voting at the election are in favor of providing the transportation, the board shall arrange and provide therefor."
Because the answers to your first four questions are somewhat dependent on the manner in which the applicable distances are to be measured, we will first consider question 5 as it relates to the measurement of distances in connection with a pupil's eligibility for transportation at the school district's expense.
The general rule is expressed in 79 C.J.S., Schools and School Districts, Section 475(3):
 "In the absence of statute a school district owes no duty to transport pupils to and from schools, and any duty it may have is purely statutory and is limited by the terms of the statute.
 "Under some statutes the duty to transport pupils living more than a stated distance from school is mandatory. While such statutes should be liberally construed to effectuate the legislative intent, they should be reasonably construed so that, without unnecessary burden to the district, all children entitled thereto may be furnished transportation as nearly complete as is reasonably possible. Under such statutes no discretion is conferred on the school board to expand the statutory delegation of power.. . ." (Emphasis added).
There are no Missouri cases interpreting Section 167.231 with respect to the manner in which the distances are to be measured, so we must look to the terms of the statute to ascertain the intent of the legislature by giving the language thereof its plain and ordinary meaning. State ex rel.Dravo Corporation v. Spradling, 515 S.W.2d 512 (Mo. 1974).
In seeking to ascertain the legislature's intent and purpose, a court is to be guided by what the legislature has said, and not what the court may think it meant to say. United Air Lines, Inc. v. State Tax Commission,377 S.W.2d 444 (Mo. Banc 1964). The question that must be asked, therefore, is whether the words of the statute indicate an intention on the part of the legislature to measure the distances from home to school along a direct route or along a route reasonably safe for pedestrian traffic. The words "mile" or "one-half mile" ordinarily comport no more than an objective distance, and in the absence of any other indicia of legislative intent, these words should be given their plain and ordinary meaning.
An aspect of the legislative history of Section 167.231 is significant. Prior to 1965, that section did not contain a provision for an election, the favorable result of which would empower school districts to transport pupils living one-half mile or more from school. That provision was added in 1965 and was accompanied by the following emergency clause, Laws 1965, p. 288:
 "Whereas in populous school districts where traffic is heavy, it is extremely hazardous for children to walk to and from school, and the longer the distance walked the more hazards incurred; and whereas on and after the first day of July, 1965, school districts, by law, may not transport children living less than one mile from school, this act is necessary for the immediate preservation of the public peace, health and safety and an emergency exists within the meaning of the constitution. This act, therefore, shall be in full force and effect when signed by the governor or on and after July 1, 1965, whichever occurs last." (Emphasis supplied)
It is clear that the General Assembly was cognizant of traffic hazards when it amended Section 167.231 in 1965, and recognized the lack of authority under the statute for school districts to transport children living less than one mile from school. Yet the legislature's solution to the problem was an immediate enactment of the election option to provide transportation to those who lived between one-half mile and one mile from the school where the school board and the community deemed it advisable for safety reasons. If the legislature had intended that safety be taken into consideration in measuring the distances already set forth in the statute, the 1965 amendment would not have been necessary, and we cannot presume that the legislature intended a needless act. Wright v. J. A. TobinConstruction Company, 365 S.W.2d 742 (K.C.Mo.App. 1963). Under these circumstances, it appears that the legislature intended that the distances mentioned in the statute were to be measured in an objective manner, allowing individual school districts to deal with safety problems of children residing over one-half mile from the school by means of an election for additional transportation. It appears that the legislative intent was that, in school districts coming within the provisions of Section 167.231, pupils living within one-half mile of the school could not be transported no matter what hazardous conditions exist.
Still other evidence of the legislative intent is found by referring to other situations in which the legislature has conferred authority to provide pupil transportation. While Section 167.231 applies to six-director and urban school districts, the board of directors of a metropolitan school district is authorized in Section 162.621, RSMo 1969, to:
 "(8) Provide for the gratuitous transportation of pupils to and from schools in cases where by reason of special circumstances pupils are required to attend schools at unusual distances from their residencies."
The legislature's decision to confer this broad authority on metropolitan school districts further indicates that such discretion was not to be exercised by other types of districts.
In Opinion No. 79, 1933, this office interpreted Section 9354, Laws 1933, p. 388, a prior transportation statute. That statute required a school board under certain circumstances to maintain an elementary school:
 ". . . within three and one-half miles by the nearest traveled road of the home of every child of school age within said school district: . . . Provided however, no transportation shall be furnished if there be any school within three and one-half miles of such pupil. . . ."
The question presented in Opinion No. 79 was whether the mileage was to be measured from the pupil's front gate or from the door of his home. Relying on cases from other jurisdictions, the opinion ruled that measurement "as the crow files" was inappropriate. Looking to the language of the statute and the probable legislative intent, the opinion also ruled that the distance should be measured "door to door" along the "nearest traveled road" or roads as provided in the statute.
Later revisions of the statute did not include the terms "by the nearest traveled road," but in Opinion No. 21, 1969, this office ruled that the "door to door" standard along a traveled route as set forth in Opinion No. 79 was applicable to the present statute.
Opinion No. 21, however, further stated that the route used to measure the applicable distance should be a route reasonably safe for pedestrian traffic.
While this result seems desirable in terms of the welfare and safety of the pupils, Opinion No. 21 did not set forth any legal authority for its conclusion. Our research has not revealed any case where safety was taken into consideration in construing a statute phrased only in terms of mileage. In fact, in at least one case, the opposite result has been reached.
A New York statute required school districts to furnish transportation for children residing more than two miles from the school. In the case ofStudley v. Allen, 24 App. Div. 678, 261 N.Y.S.2d 138 (1965), the court held that "the legislative yardstick is distance, which is, objectively, readily ascertainable, and not hazard which involves a myriad of factors."
We have demonstrated above those rules of statutory construction and indicia of legislative intent which compel the conclusion that the distances from home to school are to be measured along the most direct traveled route from the door of the pupil's home to the door of the school. Opinion No. 21, insofar as it suggests otherwise, is no longer to be followed. While this result may appear harsh, we note that a remedy is within the power of the district itself, as to transportation for all children living over one-half mile from school, who shall be furnished transportation upon two-thirds vote of the taxpayers in the district. However, there is no authorization for transportation of pupils living within one-half mile of the school. If this solution is not adequate, then it is within the province of the legislature to amend the controlling statute.
In light of this conclusion, it is unnecessary to respond to your question 5C. In question 5D, you inquire as to the effect of the manner of measurement in Section 167.231 on the computation of said aid found in Section 163.161 (H. B. 131, 79th General Assembly). Prior to this recent enactment, a specified dollar amount of state aid for transportation was distributed on the basis of the number of pupils transported per mile. See Section 163.161, RSMo Supp. 1975. The new enactment, however, eliminated the "pupil per mile" calculation, and provides as follows:
 "1. Any school district which makes provision for transporting pupils as provided in sections 167.231 and 167.241, RSMo, shall receive state aid for the ensuing year for such transportation on the basis of the cost of pupil transportation services provided the current year. A district shall receive an amount not greater than eighty percent of the allowable costs of providing pupil transportation services to and from school, except that in no case shall a district receive an amount per pupil greater than one hundred twenty-five percent of the state average approved cost per pupil transported the second preceding school year. The state board of education shall approve all bus routes and determine the total miles each district should have for effective and economical transportation of the pupils and shall determine allowable costs."
This new section distributes state aid on the basis of the actual cost of transportation, and permits the State Board of Education to supervise local districts by approving bus routes, determining what costs will be allowable and by determining the total miles each district should have for effective and economical transportation of the pupils. Except for the determination of allowable costs, these supervisory functions also appeared in the prior formula. These supervisory functions were vested in the State Board to insure that local districts do not unnecessarily inflate the costs of pupil transportation, and it does not appear that this section would have any effect on the manner in which distances are measured pursuant to Section 167.231. Since the determination of "total miles each district should have for effective and economical transportation of the pupils" bears on the computation of state aid only insofar as it serves to prevent overlapping routes or other inefficient use of transportation services, the State Board may measure those miles in any reasonable way to effectuate that purpose.
Returning now to your questions numbered 1 through 4, the first situation outlined contemplates the furnishing of transportation to pupils in kindergarten through eighth grade living less than one mile and more than one half-mile from school where there has not been a favorable vote at an election held in accordance with Section 167.231. We have already concluded that those distances are to be measured by the most direct traveled route from the pupil's home to the school. While the district's concern for the safety and welfare of these youngsters is commendable, its powers are circumscribed by the terms of the applicable statute. As stated in Cape Girardeau School Dist. No. 63 v. Frye, 225 S.W.2d 484,488 (St.L. Mo.App. 1949),
 ". . . A board of directors (of a school district) is but a creature of statute, and its members can exercise no authority unless the same is either expressly conferred or else arises by necessary implication from the powers that are conferred. . . ."
In this instance, Section 167.231 is clear in setting forth the authority of a school board to furnish transportation at taxpayer's expense. The district must provide transportation to those living more than three and one-half miles from school, and it may
provide transportation for those living one mile or more away in its discretion. However, absent a favorable election as provided in the statute, a school district has no authority to transport pupils living less than one mile but more than one-half mile from school. This conclusion was stated by the legislature itself in the emergency clause quoted above, Laws 1965, p. 288, when it enacted the election procedure. You indicated that the district here involved conducted such an election but that the proposition did not receive enough favorable votes to carry. As stated in 79 C.J.S., Schools School Districts, Section 475, p. 405:
 "In the absence of statute a school district owes no duty to transport pupils to and from schools, and any duty it may have is purely statutory and is limited by the terms of the statute." (Emphasis added).
A general principal of statutory construction is that where special methods are prescribed for the exercise of a power, other powers or procedures are excluded. Brown v. Morris, 290 S.W.2d 160 (Mo. Banc 1956). Therefore, in the absence of a favorable election in accordance with the procedure set forth in Section 167.231, a school district has no power to implement a "barrier street policy" where pupils who live less than one mile and more than one-half mile from school are furnished transportation.
A similar result is mandated with respect to children living less than one-half mile as described in your question number 3. Section 167.231 does not confer authority to transport such pupils under any circumstances, and as stated above, a school district may exercise only those powers which are expressly conferred. Cape Girardeau School Dist. v. Frye, supra. As we noted earlier in this opinion, the legislature has conferred broad authority to the directors of a metropolitan district to transport pupils who "by reason of special circumstances" are required to attend school "at unusual distances from their residences." Section 162.621, RSMo 1969. The absence of such a broad discretion as applied to the school districts governed by Section 167.231 indicates even more strongly that such districts are limited in the exercise of their powers to furnish transportation only in accordance with the terms of the statute. We therefore conclude that the district is not authorized to transport pupils living less than one-half mile from school pursuant to a "barrier street policy" as described in question 3.
Our negative rulings on questions 1 and 3 make it unnecessary to rule on the matters contained in questions 2 and 4.
Conclusion
It is the opinion of this office that:
a) the distances set forth in Section 167.231, RSMo Supp. 1975, are to be measured from the door of the pupil's home to the door of the school along the most direct traveled route;
b) an urban school district governed by Section 167.231 has no authority to transport pupils at district expense living less than one mile but more than one-half mile from school absent a favorable election for that purpose in accordance with that section;
c) an urban school district governed by Section 167.231 has no authority to transport pupils at district expense who live less than one-half mile from school.
The foregoing opinion, which I hereby approve, was prepared by my assistant, Sheila K. Hyatt.
Yours very truly,
 JOHN ASHCROFT Attorney General