Dear Dr. Mallory:
This is in response to your request for an opinion as follows:
 May a public school district contract with a private non-sectarian institution for the provision of educational services to students formally enrolled in a school of the district but assigned to the private institution for attendance and classes including those that may lead toward a high school diploma? May the district further include the membership and attendance of such students as a part of its application for state aid funds?
In addition, you inform us that certain private, non-sectarian schools and agencies wish to serve students in certain school districts who have been enrolled in the school districts but who have not been diagnosed as needing special education services. You inform us that "in many cases these students have been unable to adapt and function effectively in the public schools but may be successful in the alternative programs provided by [the private, non-sectarian schools]. . . ."
It is our understanding that your question does not involve a sectarian institution. Therefore, the well-known state constitutional prohibitions against state support for sectarian institutions will not be discussed in this opinion, as it is clear that no contract with a sectarian institution for provision of educational services could be entered into by any school district.
From your question and the facts you supplied with it, it is apparent that the students who would be served under the proposal in question are those who are entitled to a free, public education and gratuitous instruction pursuant to Article IX, Section 1(a), Missouri Constitution. The right conferred by the Constitution is only to attend a public school in the district of the student's residence. State ex rel. Biggs v. Penter, 96 Mo. App. 416,70 S.W. 375 (1902). There is no right conferred by the Constitution to attend a private school at public expense.
At the heart of your request is a basic determination of the powers of public school districts to provide for the education of persons who reside within the district. In so doing, we are reminded that:
 Our courts have frequently announced and heartily approved the salutary and time-honored principle that school laws will be construed liberally to aid in effectuating their beneficent purpose, and that, since the administration of school matters usually rests in the hands of plain, honest and well-meaning citizens, not learned in the law, substantial rather than technical compliance with statutory provisions and requirements will suffice.. . . State v. Robinson, 276 S.W.2d 235, 240
(Mo.App. 1955).
See also England v. Eckley, 330 S.W.2d 738 (Mo. banc 1959), andNaugher v. Mallory, 631 S.W.2d 370 (Mo.App. 1982). Thus, our courts recognize that the legislature has given to school boards power to exercise judgment in matters affecting school management and are not want to interfere with the board's exercise of its discretion unless the board has exercised its power in an unreasonable, arbitrary, capricious or unlawful manner. Meloy v.Reorganized School District R-1 of Reynolds County, 631 S.W.2d 933
(Mo.App. 1982).
Section 432.070, RSMo 1978, provides as follows "[n]o . . . school district shall make any contract, unless the same shall be within the scope of its powers or be expressly authorized by law, . . . ." Other than this general statutory authorization for a school district to contract, we have found no cases or statutes which discuss the ability of a school district to contract with a non-sectarian institution for the provision of educational services for nonhandicapped children whose educational needs are not being met by the school district itself. Therefore, in order to answer your question, we must determine whether or not the arrangement you describe is within the powers of a school district to enter.
School districts in Missouri are organized to discharge the constitutional mandate of educating our youth "that the rights and liberties of the people be preserved." School Dist. of Oakland v.School Dist. of Joplin, 102 S.W.2d 909 (Mo. 1937). As regards the powers of school districts in this state, the courts have stated that the board of directors of a school district can exercise only such authority as is either expressly conferred or arises by necessary implication from the powers that are conferred. See,Cape Girardeau School District No. 63 v. Frye, 225 S.W.2d 484
(Mo.App. 1949); Wright v. Board of Education of St. Louis, 246 S.W. 43
(Mo. 1922).
We believe the question you present is a close one. Yet, the facts you present are compelling. As we understand them, students who have dropped out of school or who are unable to be educated in the public schools because of discipline problems, etc., are accepted by a private, non-sectarian institution for educational purposes. The student is not required to pay tuition to attend the private school. These institutions have demonstrated substantial success in providing educational services to these students. It is our understanding that, but for the intervention of the private, non-sectarian institutions, the formal educational process for these troubled youngsters would cease.
As we noted earlier, school laws are to be liberally construed to "aid in effectuating their beneficent purpose . . . ."Robinson, supra. Given the facts you describe, in our view, the courts would approve the arrangement you describe. Thus, we believe that the beneficent purpose of our school laws, expressed most broadly in Article IX, Section 1(a), is served by the arrangement you describe when viewed in this specific factual context. We stress, however, that it is the school district's responsibility to attempt to provide services themselves. School districts may not delegate this responsibility by purchasing programs from a private institution absent circumstances that would justify utilizing school funds in this manner. A controlling factor would be, in our opinion, that a school would not have the resources to develop a program itself and by contracting for the service the district would be meeting its obligation to provide these students with an education while preserving the financial resources of the district.
The children discussed in your opinion request are those who have elected to attend a public school. Of course, a school district may not contract to do what it may not do itself, such as employ noncertificated teachers or establish classrooms in another state. Any public school district or non-sectarian institution which would be providing services under a contract such as you describe must be located within the State of Missouri and meet the same standards for the program purchased as the contracting district must for approval from the State Board of Education to meet its obligation under state law. It is obvious also that for credit to be applied to graduation requirements for these students, classes offered must meet applicable State Board of Education criteria.
In balancing the public policy of providing education to the children of this state and the duties of various public school boards to manage school districts, with the facts you present, we believe that a school district board of directors may enter an arrangement such as you describe which ultimately results in education being provided at no cost to youngsters for whom other educational avenues are foreclosed.
You have also asked if these students may be included in the membership and attendance of the contracting school district for purposes of state aid. If the students are provided with educational services through a public school which meets the same criteria and requirements that the State Board of Education has set for the school district to provide for students attending the district's schools, these students may be included by the district in its application for state aid funds. Of course, no more state aid would be paid to the district than it would receive if the child attended classes in a school district's building.
We add the following caveat:
In order to carry out its responsibility over the educational process for the youngsters described in your request, we believe the district should be required to retain ultimate authority over the content and form of the educational services which are provided by the private non-sectarian school. The district should establish procedures, including the retention of the right to monitor performance under the contract, which will allow the district to assess the effectiveness of the educational services provided these exceptional youngsters. We believe that the contract entered between the district and the private, non-sectarian institution should contain language which will assure the district board of directors of their ability to retain such authority and control.
Very truly yours,
 JOHN ASHCROFT Attorney General