In re **FORD PARCEL SERVICE, INC., Debtor.**

A. Thomas **DEWOSKIN**, Trustee for Ford Parcel Service, Inc., Plaintiff,

v.

**SEARS, ROEBUCK & COMPANY**, a Corporation, Defendant.

Bankruptcy No. 82–01122–BKC–JJB.
Adv. No. 85–0088–BKC–JJB.

United States Bankruptcy Court, E.D. Missouri, E.D.

Aug. 4, 1987.

Michael P. Burke, St. Louis, Mo., for defendant.

George O. Suggs, St. Louis, Mo., for plaintiff.

A. Thomas DeWoskin, St. Louis, Mo., Trustee.

## MEMORANDUM OPINION

JAMES J. BARTA, Bankruptcy Judge.

At Saint Louis, in this District, this 4th day of August, 1987.

This matter is before the Court on Defendant, Sears, Roebuck and Company's Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The motion was submitted to the Court on the pleadings, memoranda of law, depositions and affidavit.

This lawsuit was commenced as an adversary proceeding. The Plaintiff is the Trustee in Bankruptcy for Ford Parcel Service, Inc. (Ford Parcel). The Defendant is Sears, Roebuck and Company (Sears) with whom Ford Parcel had a contract from March, 1975 through December, 1981, under which Ford Parcel performed for Sears various delivery services throughout the Greater St. Louis area. The claims arise out of the relationship between Sears and Ford Parcel.

The Complaint is stated in six counts. The parties have agreed that Counts I, II and III may be characterized as "unloading services claims" and Counts IV, V and VI as "arbitration award claims". Sears moves for summary judgment in its favor on both sets of claims. The Court will address the claims separately.

### A. Counts I, II and III the "Unloading Services Claims"

Both Plaintiff and Defendant agree to the facts concerning the "unloading services claims" as stated in Defendant's memorandum of law. The facts show that on March 17, 1975, Ford Parcel entered into a contract with Sears under which Ford Parcel was to perform various delivery services for Sears throughout the Greater St. Louis area. With some exceptions and variations, each delivery of merchandise by Ford Parcel to a single address was counted as one "stop". The Rate Schedule contained the dollar amount which had been negotiated between Sears and Ford Parcel as the amount Ford Parcel would charge Sears for each "stop". It was also generally agreed that the stop charge would be used by Ford Parcel as the basic unit for billing Sears for certain other types of services.

John Ford, the former president of Ford Parcel, testified that in late 1975 or early 1976 an oral agreement was reached between Sears and Ford Parcel whereby Ford Parcel provided men early each morning to unload merchandise left over from the day before so that the trucks could then be loaded for that day's deliveries. Ford Parcel billed Sears for these services at the rate of three stops per day.

John Ford further testified that Sears was billed in this fashion until October 3, 1977. Thereafter, according to Mr. Ford, because of personnel changes at Ford Parcel, Ford Parcel inadvertently failed to bill Sears for these services. Mr. Ford said he first became aware of this failure to bill Sears in October or November, 1981. On November 23, 1981, Mr. Ford sent Sears a letter demanding payment of $61,314.18,

the amount he computed as unbilled and unpaid since October 3, 1977. This is the unloading services claim.

■ Defendant argues that Plaintiff's failure to bill for unloading services until November, 1981, constitutes a breach of contract. Defendant points to the written contract which states that Ford Parcel "shall promptly render to Sears invoices for services upon the performance of services provided". The unloading services agreement, however, was an oral agreement, separate from the contract covering delivery of merchandise. At no time did the parties incorporate the unloading services into the written agreement covering other work. Therefore, Plaintiff had no contractual duty to bill promptly for the unloading services. There was no breach of contract by Ford Parcel and summary judgment is denied on this point.

As an alternative defense, Defendant argues that based on the applicable statute of limitations, the Court should grant partial summary judgment on the unloading services claim.

The applicable statute of limitations is Section 516.120 RSMo 1978, which provides that lawsuits based on contract claims must be brought within five years of the date of accrual of the cause of action. The basic rule in Missouri is that a cause of action accrues at that point in time when a party could first file a lawsuit based on the cause of action. *Lato v. Concord Homes, Inc.,* 659 S.W.2d 593, 595 (Mo.App.1983).

■ The filing date of this adversary proceeding was March 12, 1985. Defendant argues that Plaintiff's right to sue arose as of the end of the week during which the unloading services were performed and that, therefore, any bill for services performed prior to March 12, 1980 is barred. Plaintiff argues that no cause of action accrued until December 15, 1981 when Defendant refused to pay for the unloading services billed for the first time on November 23, 1981.

It is well settled that a necessary element of an action on a contract is a demand for performance and the Defendant's refus-

al. It is on this basis that the Missouri legislature passed Section 516.160 RSMo which provides that on open accounts the period of limitations does not begin to run until the last charge on the account. The agreement to pay for the unloading services is in the nature of an open account. Where the last item accrues within five years, no part of the account is barred. *Minor v. Lillard,* 289 S.W.2d 1 (Mo.1956); *Poage v. Parker,* 343 S.W.2d 203, 205 (Mo. App.1961); *Cape Girardeau School District v. Frey,* 225 S.W.2d 484, 489 (Mo.App. 1949). Until the Defendant refused to pay the amount demanded by Ford Parcel, any action by Plaintiff would be premature. The Defendant is not, therefore, entitled to partial summary judgment for any portion of the amounts due on the "unloading services claims" as five years had not passed prior to the filing of the Complaint on March 12, 1985.

### B. *Counts IV, V and VI—The "Arbitration Award Claims"*

■ The relevant events concerning these claims began in October, 1979 when Teamsters Local 610 filed a grievance against Ford Parcel claiming that Ford Parcel had violated its labor agreement with the union by failing to provide a wage increase effective October 1, 1979. This grievance eventually resulted in an arbitration award dated February 7, 1980. The arbitrator sustained Local 610's grievance and held that Ford Parcel was obligated to provide the wage increase requested. Ford Parcel then filed an action in the United States District Court seeking to vacate the arbitration award. This action was unsuccessful and Ford Parcel filed an appeal in the United States Eighth Circuit Court of Appeals which was likewise unsuccessful.

Mr. Ford claims that following receipt of the Local 610 grievance, he conferred with Sears personnel (Jerry Brooks and Joe Mazzia) and was told that if Ford Parcel contested the union's claim for a wage increase and lost, Sears would pay not only any backpay amounts awarded but also Ford Parcel's litigation cost, including its attorney's fees. According to Mr. Ford,

Sears personnel made this representation on three or four occasions. Sears has not submitted any evidence to refute Mr. Ford's testimony. Sears does contest Mr. Brooks and Mr. Mazzia's authority to make such an agreement on behalf of Sears. However, Sears has refused to pay Ford Parcel the back wages and litigation costs which total $66,342.19.

Under Fed.R.Civ.P. 56(c), this Court may only sustain the entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Scherr Construction Co. v. Greater Huron Development Corp.*, 700 F.2d 463, 465 (8th Cir.1983). This Court recognizes the drastic nature of the summary judgment remedy, finding it appropriate only if "the moving party has established his right to a judgment with such clarity as to leave no room for controversy and the non-moving party is not entitled to recover under any discernible circumstances." *Butler v. MFA Life Ins. Co.*, 591 F.2d 448, 451 (8th Cir.1979). All evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970); *Jackson v. Star Sprinkler Corp. of Fla.*, 575 F.2d 1223, 1226 (8th Cir.1978).

The Court finds that there are material facts in dispute which prevent it from granting Defendant's motion for summary judgment on the arbitration award claims. There is insufficient evidence on the record as it stands to determine whether Messrs. Brooks and Mazzia had the actual or apparent authority to bind Sears to an oral agreement to pay back wages and litigation costs. The record is also silent as to the parties' intentions when the representations were made to Mr. Ford. Therefore, the Court is unable to grant summary judgment.

A separate Order consistent with the findings and conclusions set forth in the Memorandum Opinion shall be entered this date.